OHIO UNIVERSITY FACULTY ASSOCIATION, APPELLANT, *v.* OHIO UNIVERSITY ET AL., APPELLEES.

(No. CA 1087—Decided
September 3, 1982.)

*Mr. Eugene Green* and *Mr. Barry Laine,* for appellant.
*Mr. Gerald A. Mollica,* for appellees.

STEPHENSON, J. This is an appeal from a judgment entered by the Athens County Court of Common Pleas in an action instituted by the Ohio University Faculty Association, appellant herein, against Ohio University, its Board of Trustees and the University president, appellees herein. The action sought by way of declaratory and injunctive relief to require appellees to enter into a collective bargaining agreement. After trial upon stipulated facts, judgment was granted in favor of appellees.

The appellant asserts the following assignments of error:

"I. The court below erred in granting final judgment to defendant University.

"II. The court erred by failing to find that defendant University's refusal to allow its academic employees bargaining rights was violative of constitutional guarantees of equal protection.

"III. The court erred by failing to find that defendant University's failure to allow its academic employees bargaining rights was violative of traditional equitable concepts.

"IV. The court below erred by failing to grant plaintiff association the requested relief, and ordering defendant University to schedule an election to determine the collective bargaining representative of its academic employees and to bargain with the organization that prevailed in such an election."

The appellant separately argues and briefs only its second and third assignments of error. In that appellant's first and fourth assignments of error are general in form and dependent upon sustaining the second and third assignments of error, they will be jointly considered with the discussion of the merits of the second and third assignments of error.

The appellant is an unincorporated professional association whose membership is comprised of faculty members at Ohio University. Appellee Ohio University is a state university of higher learning. The management and control of the administrative and financial affairs of Ohio University is vested in appellee Ohio University Board of Trustees with day-to-day management conducted by administrators responsible to the Board of Trustees. See R.C. Chapter 3337.

Since 1967 the Board of Trustees has approved a labor agreement with a union representing various non-academic employees of Ohio University. In November 1975, the Board of Trustees agreed to permit faculty members to conduct an election to determine if the faculty desired representation by a bargaining agent. An election was held and a majority of the faculty members voted against representation.

On April 20, 1978, appellant passed a resolution requesting the Board of Trustees to grant a representative election. On June 24, 1978, the Board of Trustees deferred appellant's request until a collective bargaining bill setting forth procedures for conducting a representative election was passed by the General Assembly.

The Board of Trustees has subsequently formally reaffirmed their deferral decision.

Appellant then instituted the within

action seeking specifically the following relief:

"1. Issue a declaratory judgment declaring, adjudging and decreeing that Defendants' refusal to allow the faculty at Ohio University to designate a collective bargaining representative is arbitrary, capricious, and unreasonable, constitutes a denial of equal protection and an interference with the First Amendment rights of Plaintiff Association and its members, and is violative of the Constitution of the United States and the Constitution of the State of Ohio.

"2. Issue a preliminary, and upon final hearing a permanent injunction, directing and ordering Defendants to schedule an election to determine the collective bargaining representative of their professional staff, and to engage in collective bargaining negotiations with the association, union, or organization, if any, that prevails in such election."

Appellant's second assignment of error essentially argues that the refusal by appellee to hold a representative election violates appellant's constitutional right to equal protection of the law. The appellant asserts that by permitting non-academic employees to collectively bargain, as disclosed by the stipulation, but refusing such right to appellant, an invidious and unlawful discrimination exists which is prohibited by the equal protection provision of the federal Constitution.

In consideration of this assignment of error we deem it important to note that there is no provision in the Ohio Constitution or the statutory law of this state which requires a public entity to bargain collectively with its employees. See *F.O.P.* v. *Dayton* (1978), 60 Ohio App. 2d 259 [14 O.O.3d 238]; *F.O.P. of Napoleon* v. *Napoleon* (April 3, 1980), Henry App. No. 7-79-16, unreported; *Murray Ridge Edn. Assn.* v. *Lorain Cty. Bd. of Mental Retardation* (May 23, 1979), Lorain App. No. 2847, unreported.

Appellant would apparently concede the absence of a constitutional or statutory mandate to bargain collectively, but argues the duty to bargain collectively nevertheless exists under the right of equal protection under the federal Constitution and upon general principles of equity, by force of collective bargaining rights granted to non-academic employees.

The threshold inquiry in determining the validity of appellant's equal protection argument is the proper constitutional test to be applied in the grant of collective bargaining to one segment of university employees and its denial to another. The initial question to be decided is whether the state action operates to the disadvantage of some suspect class or impinges upon a fundamental right protected by the Constitution. If so, strict judicial scrutiny is required. If not, the state action must still be examined to determine whether it rationally furthers some legitimate state purpose. See *San Antonio School Dist.* v. *Rodriguez* (1973), 411 U.S. 1, 17.

We conclude that appellant's status as an organization of university faculty members who are seeking the right of collective bargaining does not entitle it, under the "strict scrutiny" concept, to special treatment under the Equal Protection Clause either because of the existence of a suspect class or denial of fundamental rights. While fundamental First Amendment rights of freedom of speech, association and assembly are admittedly applicable to public employees, thus preserving their right to organize and select a bargaining representative, such latter right continues to exist and is not impaired or negated by a refusal of a public body to grant collective bargaining. No fundamental right is infringed by such refusal.

In *Univ. of New Hampshire Assn. of Univ. Professors* v. *Haselton* (D. N.H. 1975), 397 F. Supp. 107, 108-109, the court stated as follows:

"Plaintiffs do not allege nor has there been any showing that their First Amend-

ment rights are impinged by the operation of N.H. RSA 98-C. As far as plaintiffs are concerned, the statute maintains the status quo; they are free to unionize in order to advance their ideas and interests. The State, however, does not have a constitutional obligation to respond to plaintiffs' demands or to enter into a contract with them. There is no constitutional right * * * to make collective bargaining mandatory. As a matter of Constitutional law, this Court agrees with the other courts which have held that no such right exists."

Similarly, in *Newport News F.F.A. Local 794* v. *Newport News* (D. Va. 1972), 339 F. Supp. 13, at 16-17, in the context of due process, the court stated as follows:

"The Supreme Court of the United States has accorded 'freedom of association' full status as an aspect of liberty protected by the Due Process Clause of the Fourteenth Amendment and by the rights of free speech and peaceful assembly set out in the First Amendment. *N.A.A.C.P.* v. *State of Alabama ex rel., Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The right of peaceable assembly is closely connected to freedom of speech and is equally fundamental. *DeJonge* v. *Oregon,* 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937). However, we do not feel that these basic rights can be extended to include the right to require a city to enter into collective bargaining sessions with an association of its employees. While federal appellate courts have recently indicated that the right of public employees to belong to a labor union falls within the constitutional protection of the First and Fourteenth Amendments, none of them sanction or suggest that the right to collectively bargain with the sovereign falls within the ambit of federal constitutional protection. *Atkins* v. *City of Charlotte,* 296 F.Supp. 1968 (W.D.N.C., 1969) (three-judge court); *Melton* v. *City of Atlanta, Georgia,* 324 F. Supp. 315 (N.D. Ga., 1971) (three-judge court)."

In that the acts of appellees in failing to collectively bargain with appellant do not violate, in our view, any of appellant's "fundamental rights," it follows the traditional and more relaxed equal protection rational basis test is applicable herein. Under the rational basis test, equal protection means only that persons in the same classification must be treated alike and that reasonable grounds which further a legitimate governmental interest exist in making the distinction between those persons who fall within the class and those who fall outside the class. See *Roth* v. *Public Employees Retirement Bd.* (1975), 44 Ohio App. 2d 155 [71 O.O.2d 240].

In the present matter, the classification complained of is between academic employees, *i.e.,* faculty members, and non-academic employees. The appellant does not claim that certain members of the faculty are treated differently than other members of the faculty. Rather, appellant argues that there are no reasonable grounds for distinguishing between academic and non-academic employees and, therefore, such classification is unreasonable.

Contrary to appellant's argument, the inherent nature of the distinctions in the two classes suggests reasonable grounds for distinguishing between academic and non-academic employees. While it is unfortunate that the parties did not more amply develop the role and relationship of the faculty in university governance, it is readily apparent that they perform the primary function for which the university exists, namely, the imparting of higher education. Further, it is reasonable to infer that such academic endeavors are performed with the exercise of independent academic and professional judgment within the ambit of board policy. Accordingly, it would appear that, unlike non-academic employees, the faculty is more closely aligned with university administration. See *NLRB* v. *Yeshiva Univ.* (1980), 444 U.S. 672.

We deem it important that a university is a unique institution and is an amalgamation of various colleges with differing goals and objectives. Likewise, the educational background, experience, demonstrated teaching abilities, and compensation to obtain persons as faculty members necessarily differ.

While appellant does not articulate the scope of the collective bargaining it is seeking, it would be safe to assume that it would be much broader than compensation alone and would reach such matters as curriculum, admissions, hiring policies, seniority, tenure, sabbatical leaves, and a myriad of similar issues affecting faculty members. To the extent that such matters are entered into a collective bargaining agreement, the ability and duty of the Board of Trustees to govern the university would be markedly diminished.

The myriad and diverse issues that would be encountered at the bargaining table, unlike unified areas of interest as to training and skills of non-academic employees wherever employed in the university, support the board's decision to continue to deal with such issues on an individual rather than collective basis. While perhaps not insurmountable, it is obvious that difficult reconciliation problems would exist both between the various faculties of each college and the university absent adoption of criteria by the General Assembly. We note also that the General Assembly has elected to treat faculty members differently than other university employees by excluding them from classified civil service. R.C. 124.11(A)(7). "* * * Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary. * * *" *Walters* v. *St. Louis* (1954), 347 U.S. 231, 237. For the reasons earlier given, we conclude there is

sufficient real dissimilarity between the two classes here considered to reasonably and rationally justify the difference in treatment accorded by the Board of Trustees. Accordingly, the second assignment of error is overruled.

The appellant's third assignment of error argues that appellant is entitled to its requested relief under traditional notions of equity. The difficulty in granting relief under this assignment of error is that it implicitly assumes, erroneously in our view, that equity can create rights. The fundamental rule is otherwise, namely, that equity can only enforce rights that otherwise exist. 20 Ohio Jurisprudence 2d 26, Equity, Section 7.

The cases cited and relied upon by appellant are readily distinguishable from the present case. In *Civil Service Personnel Assn.* v. *Akron* (1976), 48 Ohio St. 2d 25 [2 O.O.3d 97], the city of Akron consented to entering into a collective bargaining agreement with the American Federation of State, County and Municipal Employees (AFSCME), and was in the process of negotiating a new contract. Various employees then petitioned the city to conduct a representative election because they felt that their interests were not adequately represented by AFSCME. The trial court agreed with the employees and ordered a representative election. AFSCME then appealed from the trial court's judgment. In a *per curiam* opinion, the Supreme Court, at page 28, stated as follows:

"This court has recently recognized the right of public employees, under appropriate circumstances, to bargain collectively. See *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 [70 O.O.2d 223], 323 N.E. 2d 714. That right cannot be effectively eliminated for a significant number of such employees through the employer's selection of a bargaining representative that is clearly and convincingly foreign to their interest.

"*Parties ordinarily are not bound to*

*contract. However, once they voluntarily do so, it is not extraordinary for them to be bound by equitable principles."* [Emphasis added.]

In the cause *sub judice* the appellees have not voluntarily consented to contract with appellant. Thus, there is no legal or equitable right to which appellant can point which requires a party to involuntarily contract with another party.

In *F.O.P. of Napoleon* v. *Napoleon, supra,* at page 9 of the opinion, the court stated as follows:

"Thus we conclude there is no mandated duty upon the City to negotiate with any bargaining unit or agent of its employees. It may choose to do so, or it may choose not to do so. The action is purely discretionary in all except one case. That exception exists where a collective bargaining agreement has been consummated and the failure of the City is a failure to perform the terms of a contract it has voluntarily undertaken."

In *Murray Ridge Edn. Assn.* v. *Lorain Cty. Bd. of Mental Retardation, supra,* at page 4 of the opinion, the court stated as follows:

"While the Board is free to bargain with plaintiff or any other bargaining agent, it is also free not to do so. There being no duty imposed by statute or precedent, we cannot say that this court shall compel such action. Even if we were to believe that such negotiations were indicative of good and sound policy, we cannot judicially mandate, through some use of equitable principles, such an interchange between the parties. Such action must come, if at all, from the freely elected legislative representative of the people, not from judicial dictate."

In that appellees have decided, in the exercise of their discretion, not to collectively bargain with their faculty members through their representative, we cannot judicially mandate such through either equity or law. Appellant's third assignment of error is overruled.

In that we have found appellant's second and third assignments of error to be without merit, appellant's first and fourth assignments of error are likewise overruled. Accordingly, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

ABELE, J., concurs.

GREY, P.J., concurs in judgment only.