

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

December 20, 1985

Honorable Wilhelmina Delco
Chairman
Higher Education Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-401

Re: Validity and interpretation of a rider to the General Appropriations Act relating to a sick leave provision which excludes faculty members at institutions of higher education who have appointments of less than 12 months

Dear Representative Delco:

You have requested the opinion of this office concerning a rider to the General Appropriations Act that was passed by the Sixty-ninth Legislature. The rider in question states that

> [o]ther than faculty with appointments of less than twelve (12) months at institutions of higher education, employees of the state shall, without deduction in salary, be entitled to sick leave subject to the following conditions. . . .

Acts 1985, 69th Leg., ch. 980, art. V, §8c, at 7765. Prior to the Sixty-ninth Legislature, appropriation acts did not exclude faculty with appointments of less than 12 months at institutions of higher education from the usual sick leave provisions for state employees in similar riders.

Without asking specific questions, you inquire generally about the validity of the language in that rider that excludes faculty members with appointments of less than 12 months. We conclude that the rider does not conflict with general statutory law and that the equal protection clauses of the Texas and United States Constitutions do not require the legislature to provide identical sick leave for faculty members and for other state employees. It is our opinion that legislation which permits faculty members to have no absences due to illness without a deduction in salary would raise issues involving equal protection, but we believe the rider in question does not have that effect.

An appropriation act may detail, limit or restrict the use of funds appropriated by the act. It is well settled, however, that a rider attached to the General Appropriations Act may not conflict with

general law.  See Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593, 600 (Tex. 1975); Moore v. Sheppard, 192 S.W.2d 559 (Tex. 1946); State v. Steele, 57 Tex. 203 (1882); Attorney General Opinions JM-343 (1985); M-1199 (1972).  General statutory law does not specify sick leave for any state employees.  Hence, the provisions in the rider relating to sick leave are not in conflict with provisions of the general law.

General statutory law does specify that all state employees who are employed in the offices of state departments or institutions or agencies, and who are paid on a full-time salary basis, shall work 40 hours a week.  V.T.C.S. art. 5165a, §1.  Article V, section 8c of the General Appropriations Act recognizes that an employee required by law to work a minimum of 40 hours each week during the period of his employment may be prevented by illness from performing that duty.  It expressly authorizes the use of appropriated funds for specified sick leave credits which a state employee earns and accumulates and may use during absence from work due to illness.

Conditions of employment of faculty members at institutions of higher education with appointments of less than 12 months differ from those of other state employees.  Unlike the usual state employee, including the staff and administrators of institutions of higher education, a faculty member with an appointment of less than 12 months is an employee with a contractual relationship governed by state law, the rules and regulations of the governing body of the institution, and the terms of his appointments for specific years.  Ordinarily, a faculty member's contract provides a period of appointment for nine months that does not include the summer months.  While he normally remains an employee for certain purposes throughout the year, his services are required to be performed during the period of his appointments and his salary is determined on that basis.  See Attorney General Opinion JM-76 (1983).  General statutory law requires the establishment and review of faculty academic workloads.  Public information reports of the academic duties and services performed by each member of the faculty during the nine-month academic year are submitted to the Coordinating Board, Texas College and University System, for further dissemination.  See Educ. Code §§51.401 – 51.405.  A faculty member has a different level of responsibility and supervision than the state employee who is hired to work 40 hours each week.

Section 51.401 of the Education Code directs the institutions of higher education to "manage their institutions and institutional resources to achieve maximum effectiveness and to provide the greatest attainable educational benefit from the expenditure of public funds."  It is common practice at such institutions that, if classes cannot be taught by the faculty member to whom they are assigned due to illness, they are taught whenever possible by faculty members who substitute for each other or the classes are postponed and rescheduled at a later date.  This practice is considered to be the most efficient and cost-effective way to handle an unavoidable absence of a faculty member.

We believe that educational institutions are authorized to adjust the use of faculty personnel in a manner that best meets the needs of the institution. A faculty member is not employed to work a set number of hours in any week but is employed to perform the services and duties assigned to him during the period of his appointments.

In our opinion, the fact that a faculty member with an appointment of less than 12 months is not entitled to accrue and use or accumulate sick leave credits under the terms provided by the General Appropriations Act, article V, section 8c of the act, does not require the institution to deduct an absence due to bona fide illness from the compensation set by the faculty member's contract of employment for academic semesters. Absence due to unplanned illness is an implied and necessary element of compensation. Cf. City of Orange v. Chance, 325 S.W.2d 838, 841 (Tex. Civ. App. - Beaumont 1959, no writ); Attorney General Opinion H-860 (1976) (sick leave may be embraced within the ambit of the salary which a commissioners court was authorized to fix for county and precinct officials). A decision as to whether a faculty member's pay is reduced due to illness is a matter within the discretion of the institution. See State Auditor, Interpretations of Faculty Sick Leave Provisions -- House Bill No. 20, 69th Legislature (1985), pursuant to Acts 1985, 69th Leg., ch. 980, art. V, §81; at 7766 (state auditor shall provide uniform interpretations of leave provisions). Section 51.108 of the Texas Education Code directs the governing board of each state-supported college or university to issue regulations concerning authorized and unauthorized absence from duty of faculty members.

It has been suggested that the sick leave rider in the current Appropriations Act discriminates against a small number of Texas state employees by excluding them from the sick leave benefits provided all other state employees. A state law that treats some people differently than it treats others raises a possibility that the equal protection clauses of the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Texas Constitution may be violated.

The Texas Constitution guarantees equality of rights to all persons but does not forbid reasonable classifications. A classification is reasonable if it is based on a real and substantial difference that relates to the subject of the enactment and operates equally on all within the class. See Railroad Commission of Texas v. Miller, 434 S.W.2d 670 (Tex. 1968); State v. Richards, 301 S.W.2d 597 (Tex. 1957). Classifications made by the legislature are largely within the discretion of the legislature and will not be stricken down by the courts where there is a real difference to justify the separate treatment undertaken by the legislature. See Dancetown, U.S.A., Inc. v. State, 439 S.W.2d 333 (Tex. 1969); Calvert v. American International Television, Inc., 491 S.W.2d 455 (Tex. Civ. App. - Austin 1973, no writ); Attorney General Opinion MW-421 (1982).

In reviewing legislation under the equal protection clause of the Fourteenth Amendment, the United States Supreme Court usually has used

two primary standards. If a challenged law burdens an inherently "suspect" class of persons or impinges on a "fundamental" constitutional right, the law will be struck down unless the state demonstrates that the law is justified by a compelling need. If a suspect class or fundamental right is not involved, the law will be upheld unless the challenger can show that the classification bears no rational relationship to a legitimate state purpose or objective. See Vance v. Bradley, 440 U.S. 93 (1979); San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973). On a few occasions, the court also has utilized an intermediate test which asks whether the challenged law furthers a substantial interest of the state. See Plyler v. Doe, 457 U.S. 202 (1982).

We believe the rider authorizing certain sick leave for all state employees except faculty with appointments of less than 12 months affects neither a suspect class nor a fundamental constitutional right and is not the kind of situation in which a court is apt to apply the intermediate substantial state interest test. This leaves the rational basis test. Determination of whether a challenged classification is rationally related to achievement of a legitimate state purpose involves the question of whether the legislature has a legitimate purpose and also whether it is reasonable for the lawmakers to believe that use of the challenged classification will promote that purpose. See Western & Southern Life Insurance Company v. State Board of Equalization of California, 451 U.S. 648 (1981). We cannot conclude that the varying treatment of faculty and other state employees in the matter of sick leave is so unrelated to the achievement of a legitimate purpose that a court can only find that the legislature's actions were irrational. See Vance v. Bradley, supra. Cf. Ohio University Faculty Association v. Ohio University, 449 N.E.2d 792 (Ohio Ct. App. 1982) (dissimilarity between nonacademic university employees and faculty justified university's different treatment of collective bargaining). See also Attorney General Opinions JM-60 (1983) (discussing in detail issues of constitutionality under Texas and U.S. constitutions as applied to funding for certain schools under Foundation School Program); Attorney General Opinion MW-572 (1982) (relating to limitation of employment of certain city council members and the equal protection clauses).

We predict that a court would find that faculty members and other state employees are not so similarly situated that the equal protection clauses require the legislature to apply the same sick leave provisions to both classes of employees. It is our opinion, however, that a determination that one class of employees may never be absent from the classroom, laboratory or office due to illness without a deduction from salary is probably arbitrary and would raise a question of equal protection. We do not believe the rider in question prohibits all absence by faculty due to illness without a deduction from salary.

We also believe that provisions for sick leave are distinguishable from provisions for vacation leave. Beginning with the

Appropriations Act passed in 1981, the legislature has excepted faculty with appointments of less than 12 months at institutions of higher education from the provisions authorizing paid vacations for employees of the state. See Acts 1985, 69th Leg., ch. 980, art. V, §8a. The denial of paid vacations to faculty members during the periods of their teaching appointments while allowing vacation leave for other state employees is based on what appears to be a reasonable classification and a difference that justifies separate treatment. In our opinion, a court would find that such denial of vacation leave to faculty members is rationally related to the achievement of a legitimate state purpose, namely, the furtherance of the greatest attainable educational benefit from the expenditure of public funds.

Assuming the restrictive language in the rider is valid, you also ask whether faculty who accrued sick leave prior to September 1, 1985, may receive all of such sick leave since it was accrued under previous Appropriations Acts. We conclude that, during the current biennium, the General Appropriations Act does not authorize appropriated funds for the use of sick leave credits earned and accumulated by a faculty member during periods of prior acts if the member is absent from teaching duties as a member of a faculty. The exclusion of faculty members from the act does not change college and university employees' accrual or use of sick leave credits in their capacity as staff or administrators. We conclude that the accumulated and unused sick leave of a person whose employment with the state is uninterrupted remains to his credit and may be used when and to the extent that the person is an employee eligible to use sick leave. See Attorney General Opinion JM-76 (1983) (relating to use of accrued vacation time by university employee who serves in more than one capacity); State Auditor, Interpretation of Faculty Sick Leave Provisions -- House Bill No. 20, 69th Legislature (1985). Cf. Acts 1985, 69th Leg., ch. 980, art. V, §8f, at 7766.

It has been suggested that an appropriations act rider that denies faculty members the use of sick leave accrued and accumulated prior to the date of the act may be prohibited by the clauses of the United States and Texas Constitutions which provide that the state may not pass a law impairing the obligation of contracts. U.S. Const. art. I, §10, cl. 1; Tex. Const. art. I, §16. We conclude that the fact that a statute may become part of an employee's contract which the state may not impair by a subsequent enactment does not raise an issue which is applicable to the rider in question. See Ward v. City of San Antonio, 560 S.W.2d 163 (Tex. Civ. App. - San Antonio 1977, writ ref'd n.r.e.) (relating to amendment to state statute that would impair contract between fireman and city).

We are not aware of any state statute which has expressly provided sick leave for state employees. But cf. V.T.C.S. art. 1269m, §26 (providing sick leave under firemen's and policemen's civil service act). The purpose of each General Appropriations Act is the appropriation of state funds to be used by state government, including institutions of higher education, during the biennium of each act, and

each act expires at the end of its biennium.  Article VIII, section 6 of the Texas Constitution provides that no appropriation may be made for a period longer than two years.  A General Appropriations Act does not enact substantive law but contains riders that detail, limit, or restrict the use of the funds appropriated by the act.  The riders in each act apply to funds appropriated by that act and, like the rest of the act, expire at the end of the biennium.  See Acts 1985, 69th Leg., ch. 980, art. V, at 7729.  When each session of the legislature appropriates funds with riders detailing the use of those funds, it does not impair rights that had vested under previous appropriations acts.

## S U M M A R Y

Restrictive language relating to faculty sick leave in article V, section 8c, of the General Appropriations Act passed by the Sixty-ninth Legislature does not conflict with general statutory law and does not violate equal protection or impairment of contract clauses of the Texas and United States Constitutions.  This language, however, does not prohibit absences due to illness without a decrease in pay.  A faculty member's sick leave that accrued prior to September 1, 1985, remains to his credit and may be used if he is an employee eligible to accrue and use sick leave.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General