**HOTEL & RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION, AFL-CIO, Plaintiff,**

v.

**PLAYBOY CLUBS INTERNATIONAL, INC., Defendant.**

**No. 7418.**

United States District Court,
S. D. Ohio, W. D.

March 10, 1971.

Jonas B. Katz, Robert T. Noonan, Cincinnati, Ohio, for plaintiff.

Samuel M. Allen, Cincinnati, Ohio, and Lawrence F. Doppelt, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION AND ORDER

PORTER, District Judge.

Plaintiff union has invoked the jurisdiction of this Court pursuant to 29 U.S.C. § 185(a) and 9 U.S.C. § 4, seeking an order from this Court compelling arbitration of a dispute over the discharge of a Detroit Playboy Club "bunny." Defendant, Playboy Club, originally moved to dismiss the petition to compel arbitration on the ground that unique collective bargaining provisions have been established for the discharge of bunnies which exclude disputes over bunny discharges from arbitration. Pursuant to a request from this Court the parties filed a stipulation agreeing that the case should be decided on the merits rather than on a motion to dismiss. Accordingly, this case shall be decided on the merits and the motion to dismiss shall be treated as voluntarily withdrawn.

Article 9(d) of the collective bargaining agreement provides generally for the arbitration of "* * * any dispute, difference, or disagreement" between the parties. However, Article 7(q) states that "(t)he provisions of this paragraph (q) shall be the exclusive means for dealing with discharges and suspensions of bunnies, except for discharges or suspensions for union activity, which shall be subject to the provisions of Article 9 of this Agreement." Thus, the

contract calls for the arbitration of all disputes arising under the contract *except* those relating to the discharge or suspension of bunnies. The only way a dispute over the discharge of a bunny can be arbitrated is if it was for union activity.

Special provisions are made for the discharge of bunnies because the parties acknowledge that the highest standards for bunnies must be fostered and maintained. The parties have agreed that outside arbitrators could not fairly make decisions involving such specialized concepts as "bunny image," etc.

Article 7(q) provides that just cause for discharge shall include, but shall not be limited to, lack of "bunny image," which is defined in part as the physical appearance of a bunny and the impression she conveys to others. Article 7(q) also provides for a special three-step grievance procedure for discharges or suspensions of bunnies (except for discharges or suspensions for union activity). The first step is a conference with the local club general manager, the union steward, and the bunny. The second step is a review of the decision by a bunny panel. The third step is an appeal to the executive vice-president of Playboy Clubs International. His decision " * * * shall be final and binding in all cases and shall not be subject to any further review by any means or in any forum." The second step, review by a panel of her peers, insures fair treatment to the bunny discharged for lack of "bunny image." The intent of the parties seems to be that the special grievance procedure set up for bunnies be exclusive and final.

Emily (Jo) Mathews, a former bunny, was discharged from the Detroit Playboy Club on October 24, 1969, for lack of "bunny image." On October 29, 1969, Miss Mathews filed a grievance protesting her discharge, and invoked a bunny panel under Article 7(q) of the contract. On October 29, 1969, a bunny panel met under Article 7, and upheld the discharge. After this decision, Miss Mathews did not pursue the third and final stage of the special grievance procedure. Instead, she then made the claim that she was, in reality, discharged for union activity.

The affidavit of Mr. John King, General Manager of the Detroit Playboy Club, states that he was involved in the decision to discharge Miss Mathews and that the sole reason for her discharge was that, in the past two years, her appearance, attitude on the job, and the impression she conveyed to customers was continually declining. He states that "(s)he was not terminated for her union activities, such activities playing no part whatsoever in the decision to terminate her." Mr. King's affidavit was filed in support of defendant's motion to dismiss.

An affidavit from Mr. Anthony Anselmo, assistant to the general president of the union, states that at some time prior to her discharge, Emily (Jo) Mathews had been on a bunny negotiating committee which negotiated the present contract between the parties. He states that at times the negotiating sessions resulted in high feelings on both sides. Affiant further stated that Miss Mathews was a shop steward at the Detroit Playboy Club. On November 18, 1969, the union requested that the dispute be submitted to arbitration. Defendant refused, and this action to compel arbitration resulted.

The issue in this case is whether a discharge for lack of "bunny image" which was affirmed by a panel of bunnies in the second stage of the special nonreviewable grievance process becomes arbitrable by a subsequent assertion that the discharge was for union activity. We hold that it does not.

It is the duty of this Court to ascertain whether the party seeking arbitration has a claim which on its face is governed by the contract (United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and this Court's inquiry is strictly confined to the question whether the reluctant party did

agree to arbitrate the grievance. The reason for this limitation is that arbitration is a matter of contract and a party cannot be required to arbitrate any dispute which he has not agreed to so arbitrate. United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). An order to arbitrate the dispute should not be denied unless it may be said with positive assurances that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute; and doubts should be resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Co., supra. A guide for the Court's inquiry is found in District 50, United Mine Workers of America v. Chris-Craft Corp., 385 F.2d 946 (6 Cir., 1967), an action by a union to compel arbitration of grievances concerning the discharge of employees. The Court of Appeals for the Sixth Circuit said:

> "In order to perform its function in applying the provisions of the contract, the Court must determine that a discharge occurred. After such a determination, the Court must then inquire as to the cause of the discharge and determine from the agreement if the discharge is a matter for arbitration. Such a determination necessarily entails some limited inquiry into the factual circumstances surrounding the discharge."

On its face, plaintiff's claim is governed by the collective bargaining agreement entered into by the parties. The provision specifically designed for plaintiff's grievance is Article 7(q). This provision is a clear exception to the general requirement of arbitration agreed upon by the parties. Although this Court is mindful of the strong national labor policy favoring arbitration of labor disputes, 29 U.S.C. § 171, we are not free to ignore the plain wording of the agreement between the parties.

■■ It is our conclusion that this discharge is not a matter for arbitration. Under the contract Playboy agreed to arbitrate discharges and sus-

pensions of bunnies for union activity only. Mathews did not claim that her discharge was for union activity until after she had lost her appeal and was presumably found to lack "bunny image" by a panel of other bunnies. Instead of exhausting the special grievance procedure specifically for bunnies, which would have been final, binding, and non-reviewable, Mathews attempted to sidestep the bargained-for grievance procedure. Federal labor policy dictates that individual employees not be allowed to sidestep agreed-upon grievance procedures which have been validly initiated, merely because of an adverse decision. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960). If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Contract grievance procedures must be exhausted before direct legal redress is sought, unless these procedures are specified as nonexclusive. Republic Steel Corp. v. Maddox, supra. Considerations of finality and practicality compel this result.

The three-step grievance system which has been agreed upon by the parties seems to be a fair and practical solution to the problems which necessarily arise out of concepts such as "bunny image." It provides each aggrieved bunny a panel of her peers which is uniquely qualified to determine whether she has the proper "bunny image."

A reading of the collective bargaining agreement indicates that the parties intended the unique grievance procedure initiated by Miss Mathews to be final and nonreviewable. This is sensible in light of the fact that concepts such as "bunny image" cannot be readily interpreted and applied by an outside review-

er. Thus, when Miss Mathews was found to lack "bunny image" by the bunny panel and failed to appeal, she was thereafter precluded from demanding arbitration under the theory that her discharge was really for union activities. Simply stated, Miss Mathews failed to preserve her "bunny image" and thereby breached a condition of her employment. The finding that Miss Mathews lacks "bunny image" was a sufficient reason for her discharge under the contract.

We have studied the proffered arbitrator's opinion In the Matter of The Arbitration Between Playboy Clubs International, Inc. and Dining Room Employees Union, Local 1, H. & R. E. & B. I. U., AFL–CIO, and do not find it controlling. Although the arbitrator's decision involves the same contract and the discharge of a bunny, there is an important factual distinction. In the arbitrated case, the union charged that the bunny was discharged for union activities *at each and every stage* of the proceedings. The bunny in that case asserted from the start that union activity was the real reason for her discharge. In contrast, Miss Mathews originally pursued the special grievance procedure designed for appealing discharges for lack of "bunny image." Only after she had lost in the first two stages of her appeal, did she first allege that union activity was the real cause of her discharge.

Since the grievance does not amount to a cause of action for breach of the collective bargaining agreement, whether it states a cause of action for an unfair labor practice is a matter properly for the NLRB in the first instance. 29 U.S.C. § 160; San Diego Building Trades Council, Millmen's Unions, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); District 50, United Mine Workers of America v. Chris-Craft Corp., 385 F.2d 946 (6 Cir., 1967). In effect, plaintiff alleges that an unfair labor practice has been committed. The NLRB has expedited procedures for processing such

claims and has the power to prevent " * * * any person from engaging in any unfair labor practice affecting commerce." 29 U.S.C. § 160(a). Thus, plaintiff's remedy now properly lies with the NLRB.

For the foregoing reasons the petition to compel arbitration is hereby denied. It is so ordered.