ASSOCIATION OF CUYAHOGA CTY. TEACHERS OF TRAINABLE RETARDED, APPELLEE, *v.* CUYAHOGA CTY. BD. OF MENTAL RETARDATION ET AL.; SERVICE, HOSPITAL, NURSING HOME & PUB. EMP. UNION, LOCAL NO. 47, APPELLANT.

[Cite as Assn. of Cuyahoga Cty. Teachers of Trainable Retarded *v.* Cuyahoga Cty. Bd. of Mental Retardation (1983), 6 Ohio St. 3d 190.]

(No. 82-642—Decided August 10, 1983.)

*John T. DeFazio Co., L.P.A., Green, Schiavoni, Murphy, Haines & Sgambati Co., L.P.A., Mr. Eugene Green* and *Mr. Barry Laine,* for appellee.

*Schwarzwald, Robiner, Wolf & Rock Co., L.P.A., Mr. Melvin S. Schwarzwald* and *Mr. Steven B. Potter,* for appellant.

*Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee, Robert J. Walter Co., L.P.A.,* and *James E. Melle Co., L.P.A.,* urging affirmance for *amicus curiae,* Ohio Assn. of Public School Employees.

LOCHER, J.

I

The primary issue in this cause concerns the standard which a court should apply in determining whether it is proper to order a representation election for a bargaining unit of public employees serving under a collective

bargaining contract. Appellant argues that this court's holding in *Civil Service Personnel Assn. v. Akron* (1976), 48 Ohio St. 2d 25 [2 O.O.3d 98] ("*Akron*"), requires that "* * * the incumbent organization * * * be proven to have acted clearly and convincingly foreign to the interests of the employees in the bargaining unit" before a court could order a representation election. We disagree.

Appellant bases its argument on the following language in *Akron* at page 28: "This court has recently recognized the right of public employees, under appropriate circumstances, to bargain collectively. See *Dayton Teachers Assn. v. Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127 [70 O.O.2d 223], 323 N.E. 2d 714. That right cannot be effectively eliminated for a significant number of such employees through the employer's selection of a bargaining representative that is clearly and convincingly foreign to their interest."

*Akron*, however, involved an effort by employees of certain departments of the city of Akron to hold an election to determine whether a community of interest existed with the other employees in the union. That is, the "clearly and convincingly foreign to their interest" standard was applied in *Akron* only to the issue of whether distinct bargaining units existed. This case, however, requires us to consider when it is appropriate for the entire bargaining unit to vote on whether a new representative should serve the bargaining unit.

We agree with the court of appeals, however, that the logic of *Akron* provides the appropriate analytical framework for review in this case: "* * * When the rights of parties are clearly defined and established by law (especially when the source of such definition is through constitutional or statutory provision) the maxim 'equity follows the law' is usually strictly applied. However, as in the case at bar, where the rights of parties are not thus delineated, broad equitable principles of fairness obtain, and the outcome of each case will be determined in light of such considerations." *Akron, supra,* at 27.

In Ohio, no applicable statutory law presently exists. Nevertheless, we — along with the court of appeals — recognize that the guidelines in the National Labor Relations Act, especially Sections 151 *et seq.,* Title 29, U.S. Code, are illustrative of "broad equitable principles" at work. Indeed, the court of appeals observed in this case:

"Under federal law, there exist four limitations on the right of a labor organization, a group of employees, or an employer to challenge a bargaining representative on the ground that it has lost its majority status among the employees of a bargaining unit. The first limitation is statutory; 29 U.S.C. 159(c)(3) provides that no election may be held in any bargaining unit in which a valid election has been held within the preceding twelve months. The other three limitations on the right to remove a bargaining representative were established by the N.L.R.B. and upheld by the federal courts. Under the 'certification bar,' the N.L.R.B. refuses to entertain petitions showing lack of majority status, which are filed within one year after certification of a union,

unless 'unusual circumstances' are shown to exist. *General Box Co.* (1949), 82 N.L.R.B. 678; *Mar-Jac Poultry Co.* (1962), 136 N.L.R.B. 785; *Brooks* v. *N.L.R.B.* (1954), 348 U.S. 96; *Burns* v. *Int'l Security Serv., Inc.* [*sic N.L.R.B.* v. *Burns Int'l Security Services, Inc.*] (1972), 406 U.S. 272; *N.L.R.B.* v. *Pepsi-Cola Bottling Co.* (C.A. 10, 1980), 613 F.2d 267, 272. Another limitation, the 'recognition bar,' prohibits a challenge to a union's majority status for a 'reasonable time' after an employer has in good faith recognized a union's demonstrated majority, where no other union was engaged in organizing the employees. *Timbalier Towing Co.* (1974), 208 N.L.R.B. 613. The 'recognition bar' was created to give a recognized union a reasonable time within which to negotiate a collective bargaining agreement with the employer.

"The third limitation, the 'contract bar,' imposes a procedural qualification on representation petitions filed under 29 U.S.C. 159(c); where a union and an employer have entered into a collective bargaining agreement of no more than three years duration, a petition may only be filed within a thirty-day time period, more than sixty days and less than ninety days before termination of the existing contract. *Retired Persons Pharmacy* v. *N.L.R.B.* (C.A. 2, 1975), 519 F. 2d 486; [*Local Union 3074,*] *United Steel Workers* v. *Shore* (D.C. Pa. 1974), 386 F. Supp. 600."

In this case, more than half of the members of the bargaining unit signed petitions requesting an election. They entered this request more than five years after the most recent election, and approximately three years after the most recent contract went into effect but within the last quarter of the last year of that contract.

Accordingly, we hold that, under the totality of the circumstances in this case, equity compels that we affirm the judgment of the court of appeals and grant the expressed wishes of a majority of the bargaining unit for a representation election.

## II

The court of appeals also held that "* * * a court is without power to compel negotiations between * * * [a public] agency and a labor organization." Appellant contends, however, that "[w]here an Ohio public employer has recognized a labor organization as the exclusive collective bargaining agent of a unit of its employees, it must continue to collectively bargain exclusively with that labor organization as the representative of those employees unless a new collective bargaining agent is chosen by the employees in an election." We disagree.

In *Dayton Teachers Assn., supra,* this court held, in paragraph one of the syllabus: "A board of education is vested with *discretionary* authority to negotiate and to enter into a collective bargaining agreement with its employees, so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law." (Emphasis added.) Clearly, the *Dayton Teachers Assn.* holding recognizes a *discretionary* authority for a board of education to bargain col-

lectively. Furthermore, appellant has not cited any statutes or cases requiring that a public employer in Ohio continue to bargain collectively after having done so previously. Therefore, the court of appeals was correct in concluding that the trial court was without power to require the Board to bargain collectively.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

CELEBREZZE, C.J., KEEFE, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

KEEFE, J., of the First Appellate District, sitting for W. BROWN, J.