THE STATE, EX REL. WILLIAMS, *v.*
BELPRE CITY SCHOOL DISTRICT
BOARD OF EDUCATION.

(No. 85 CA 35 — Decided
September 25, 1987.)

*Cloppert, Portman, Sauter, Latanick & Foley* and *Mark A. Foley,* for relator.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *Matthew J. DeTemple,* for respondent.

STEPHENSON, J. This is an original action wherein Linda Williams, relator herein, prays for a writ of mandamus ordering Belpre City School District Board of Education, respondent herein, to issue a continuing contract to her.

On December 12, 1985, relator filed a complaint seeking a writ of mandamus, and respondent subsequently filed an answer and an amended answer to relator's complaint. On September 8, 1986, the parties filed a stipulation of facts which provides, in pertinent part, as follows.

Respondent is the corporate entity charged with the management and control of schools in its district as well as the employment of teachers in the school district. Relator is a mathematics teacher employed in the school district. On July 23, 1980, relator was issued an eight-year professional teaching certificate by the State Board of Education. On July 20, 1981, relator was initially employed by respondent, being given a one-year limited contract for the 1981-1982 school year. At the time of her employment with respondent, relator had not attained continuing contract status in any other Ohio school district.

On April 19, 1982, respondent granted relator a two-year limited contract to teach for the 1982-1983 and 1983-1984 school years. Relator taught during both the 1981-1982 and 1982-1983 school years, but took a maternity leave of absence and did not teach during the 1983-1984 school year. On March 28, 1984, relator sent a letter to school district superintendent Jerry Russell stating her intention to return to work for the 1984-1985 school year and requesting a half-day teaching position.

On April 16, 1984, at a duly called meeting of respondent, relator was granted a three-year limited contract to teach in the school district from August 1984 until August 1987. A written contract reflecting respondent's actions was prepared and signed by the applicable school district officials, but the contract was not delivered to or signed by relator. Furthermore, relator had no actual knowledge of the April 16, 1984 action by respondent and was never issued a probationary limited contract accompanied by written notice containing recommendations regarding professional improvement.

On August 6, 1984, respondent held a meeting and adopted a resolution which provided as follows:

"BE IT RESOLVED, that the contracts of the following teachers be approved for half-time assignments:

"Carol Peal — Elementary Music
Half-time (50%)
Belpre Elementary
"Linda Williams — Middle School
Math
Half-time
(56.25%)"

A one-year limited contract for the 1984-1985 school year reflecting the August 6, 1984 resolution adopted by respondent was prepared and was signed by both parties. Relator then taught half-time (56.25 percent) in the school district and was paid $12,003.19 for the 1984-1985 school year. No action regarding the employment of relator was taken at the April 1985 meeting of respondent, and relator asked respondent why it had taken no action. The Belpre Education Association, the exclusive bargaining agent for teachers in the school district, including relator, demanded that respondent issue relator a continuing contract.

On July 29, 1985, respondent held a meeting at which it adopted a resolution granting relator a three-year limited contract for the 1985-1986, 1986-1987, and 1987-1988 school years. Respondent prepared and signed a contract reflecting the July 29, 1985 resolution, but relator did not sign such contract.

During the applicable period of time, from August 1, 1982 until July 31, 1985, a collective bargaining agreement between respondent and the Belpre Education Association was in effect which provided, in pertinent part, as follows:

"ARTICLE VII INDIVIDUAL CONTRACTS

"8.1 All teachers employed by the Board shall receive written contracts. The contracts shall include:

"A. Name of the teacher

"B. Name of the school district

"C. Type of contract

"D. Duration of contract

"E. Annual salary and basis for determining the amount. Such information shall be given only for the initial year of a multi-year contract and said information will be provided in the annual salary notification thereafter during the term of the contract.

"F. Provision for the appropriate signatures and date.
"* * *

"8.3 The issuance of renewed limited contracts, new continuing contracts, and supplemental contracts shall be completed by June 1. Signed contracts shall be returned by teachers no later than June 15. Salary and supplemental salary notices shall be issued [to] each teacher not later than twenty (20) working days following ratification of the contract by the Board.
"* * *

"8.5 Teacher contracts will be issued in the following sequence: one year, two years, three years, and five years. On the basis of evaluation, the contract sequence may be interrupted at each level by a one-year probationary contract. If at any time it is necessary to issue a probationary contract, a teacher will be notified in writing of the change and appropriate reasons by not later than April 30 of the year the teacher's contract is up for renewal. Failure of the Board to give a teacher written notice of nonrenewal or of the issuance of a probationary contract shall result in the teacher being issued the length contract in accordance with this article.
"* * *

"29.1 ARTICLE XXIX PROVISIONS CONTRARY TO LAW

"In the event there is a conflict between a provision of this agreement and any applicable state law, rule or regulation of any governing agency, the parties shall meet for the purpose of bringing the affected provision into compliance with the law. Discussion in this regard will be limited to the affected provision in this contract.
"* * *

"ARTICLE XXXI TEACHING EXPERIENCE

"The Belpre Schools will recognize 'years of teaching experience' as follows:
"* * *

"31.3 One year of teaching experience will be recognized for each two years of one-half (½) day assignment of at least one hundred twenty (120) days under a teacher's contract."

The collective bargaining agreement further provided a four-level grievance procedure with the fourth level being arbitration of a dispute if the aggrieved party requested arbitration within ten days after the time limit for respondent's response at level three of the grievance procedure. Respondent and the Belpre Education Association entered into a new collec-

tive bargaining agreement effective from August 1, 1985 until July 31, 1987, which contained substantially similar provisions to the prior collective bargaining agreement.

On September 9, 1985, relator filed a grievance in which she claimed that she was entitled to a continuing contract. The grievance was submitted by relator through the first three levels of the grievance procedure set forth in the collective bargaining agreements, but relator did not submit the grievance to the fourth and final level of the contractual grievance procedure, binding arbitration. Relator continued to teach as a mathematics teacher, full-time in the school district, from the 1985-1986 school year until the present time.

R.C. 2731.01 provides as follows:

"Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

In order for a relator to establish entitlement to the issuance of a writ of mandamus, he must demonstrate: (1) that he has a clear legal right to the relief prayed for; (2) that the respondent is under a clear legal duty to perform the requested act; and (3) that the relator has no plain and adequate remedy in the ordinary course of law. *State, ex rel. O.M. Scott & Sons Co.,* v. *Indus. Comm.* (1986), 28 Ohio St. 3d 341, 28 OBR 406, 503 N.E. 2d 1032; *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 6 OBR 50, 451 N.E. 2d 225; *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus.

Respondent initially argues that relator is not entitled to a writ of mandamus ordering the issuance of a continuing contract as of June 1, 1985 because relator does not have a clear legal right to the relief prayed for. R.C. 3319.11 provides, in pertinent part, as follows:

"*Teachers eligible for continuing service status in any school district shall be those teachers qualified as to certification, who within the last five years have taught for at least three years in the district,* and those teachers who, having attained continuing contract status elsewhere, have served two years in the district, but the board of education, upon the recommendation of the superintendent of schools, may at the time of employment or at any time within such two-year period, declare any of the latter teachers eligible." (Emphasis added.)

A person is eligible for a continuing contract under R.C. 3319.11 if he is (1) a teacher, (2) who holds a professional, permanent or life certificate, and (3) has taught for at least three of the last five years in the district. *State, ex rel. Voss,* v. *Northwest Local Bd. of Edn.* (1981), 66 Ohio St. 2d 274, 20 O.O. 3d 267, 421 N.E. 2d 516, syllabus. The parties herein stipulate that relator meets the first two requirements. With regard to the third requirement of teaching at least three of the last five years in the district, the Ohio Revised Code makes no distinction between full-time and part-time teaching days. *State, ex rel. Rodgers,* v. *Hubbard Local Bd. of Edn.* (1984), 10 Ohio St. 3d 136, 10 OBR 458, 461 N.E. 2d 1308. Where part-time teaching experience involves substantial duties which are performed on a regular basis, years spent teaching less than full school days will be counted in determining eligibility for a continuing contract. *Rodgers, supra; State, ex rel. Garay,* v. *Hubbard Local Bd. of Edn.* (1984), 11 Ohio St. 3d 20, 21, 11 OBR 53, 54, 462 N.E. 2d 1219, 1220.

In the instant case, where relator taught full-time for school years

1981-1982 and 1982-1983, and half-time (56.25 percent) for school year 1984-1985, given the liberal construction to be afforded the applicable provisions, which have evolved from the Ohio Teacher Tenure Act of 1941, in favor of teachers, *Rodgers, supra,* at 138, 10 OBR at 459, 461 N.E. 2d at 1309-1310, relator's half-time teaching experience for 1984-1985 is sufficiently substantial and regular to constitute a year that should be counted in determining her eligibility as of the conclusion of the 1984-1985 school year for a continuing contract. By adding this year to relator's other two full-time years, she is eligible for a continuing contract pursuant to R.C. 3319.11. See *Voss, supra; Rodgers, supra.*

A person eligible for a continuing contract can either be denied a contract by proper notification, be issued a limited contract of up to two years if it is accompanied by a written notice containing recommendations regarding professional improvement, or be granted a continuing contract. *Voss, supra,* at 276, 20 O.O. 3d at 268, 421 N.E. 2d at 518. *Rodgers, supra; Garay, supra.* In the case *sub judice,* it is apparent that respondent failed to follow the first two options and thus, pursuant to R.C. 3319.11, was under a duty to issue relator a continuing contract beginning for the 1985-1986 school year.

Respondent argues, however, that R.C. 3319.11 does not apply in that, pursuant to R.C. 4117.10(A), the collective bargaining agreement provision regarding the issuance of a three-year contract after the issuance of one-year and two-year contracts, Section 8.5, Article VIII, and the provision defining "years of teaching experience" as one year for each two years of "one-half" day assignment, Section 31.3, Article XXXI, would be applicable.

R.C. 4117.10(A) provides as follows:

"(A) An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. *Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. Laws pertaining to* civil rights, affirmative action, unemployment compensation, workers' compensation, the retirement of public employees, residency requirements, *the minimum educational requirements contained in the Revised Code pertaining to public education including the requirement of a certificate by the fiscal officer of a school district pursuant to section 5705.41 of the Revised Code, and the minimum standards promulgated by the state board of education pursuant to division (D) of section 3301.07 of the Revised Code prevail over conflicting provisions of agreements between employee organizations and public employers.* Except for sections 306.08, 306.12, 306.35, and 4981.22 of the Revised Code and arrangements entered into thereunder, and section 4981.21 of the Revised Code as necessary to comply with section 13(c) of the 'Urban Mass Transportation Act of 1964,' 87 Stat.

295, 49 U.S.C. 1609(c), as amended, and arrangements entered into thereunder, *Chapter 4117. of the Revised Code prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in Chapter 4117. of the Revised Code or as otherwise specified by the general assembly.* Nothing in this section prohibits or shall be construed to invalidate the provisions of an agreement establishing supplemental workers' compensation or unemployment compensation benefits or exceeding minimum requirements contained in the Revised Code pertaining to public education or the minimum standards promulgated by the state board of education pursuant to division (D) of section 3301.07 of the Revised Code." (Emphasis added.)

Prior to the enactment of R.C. Chapter 4117, public employees had been permitted to collectively bargain with their employer only when the employer, in its discretion, chose to engage in such bargaining. *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, 70 O.O. 2d 223, 323 N.E. 2d 714; *Assn. of Cuyahoga Cty. Teachers of Trainable Retarded* v. *Cuyahoga Cty. Bd. of Mental Retardation* (1983), 6 Ohio St. 3d 190, 6 OBR 245, 451 N.E. 2d 1215. On April 1, 1984, the General Assembly enacted the Public Employees' Collective Bargaining Act, codified in R.C. Chapter 4117. This Act established a comprehensive collective bargaining law for Ohio's public employees. *Ohio Assn. of Pub. School Emp.* v. *New Miami Local Bd. of Edn.* (1986), 31 Ohio App. 3d 163, 165, 31 OBR 328, 330, 509 N.E. 2d 973, 975-976.

Relator argues that the "minimum educational requirements" and "minimum standards promulgated by the state board of education" exceptions contained in R.C. 4117.10(A) include the subject of entitlement, pursuant to R.C. 3319.11, to a continuing contract. However, the statute specified in R.C. 4117.10(A) in conjunction with "minimum educational requirements," R.C. 5705.41, has no relevance to such issue and relator cites no law in support of the proposition that "minimum educational requirements" encompasses teacher entitlement to a continuing contract. Indeed, the plain meaning of this terminology indicates to the contrary. Moreover, the "minimum standards promulgated by the state board of education" pursuant to R.C. 3301.07(D) as an exception to R.C. 4117.10(A) is also inapposite to the issue herein. Accordingly, to the extent that R.C. 3319.11 conflicts with the collective bargaining agreements, the collective bargaining agreements prevail. R.C. 4117.10(A); see, also, *Lilley* v. *Cuyahoga Falls City School Dist. Bd. of Ed.* (June 4, 1986), Summit App. No. 12489, unreported.[1]

The wording of R.C. 4117.10(A) stating that R.C. Chapter 4117 "prevails over any and all other conflicting laws" was designed to free public employees from conflicting laws which

---

[1] Neither party questions the applicability of R.C. 4117.10(A) to the collective bargaining agreements with respect to its date of enactment. R.C. Chapter 4117 was enacted on April 1, 1984; Section 4 of the Public Employees' Collective Bargaining Act acts "as a 'grandfather' provision that recognizes and favors existing employee organizations representing public employees that already have collective bargaining agreements with public employers. * * *" *Ohio Assn. of Pub. School Emp.* v. *New Miami Local Bd. of Edn.* (1986), 31 Ohio App. 3d 163, 165, 31 OBR 328, 331, 509 N.E. 2d 973, 976. Accordingly, both collective bargaining agreements were subject to R.C. 4117.10(A), if applicable, pursuant to the terms of such provision.

may act to interfere with the newly established right to collectively bargain. *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382, 384, 18 OBR 437, 439, 481 N.E. 2d 632, 634.[2] The contended conflicting provisions of the collective bargaining agreements herein are those providing for a three-year contract after one- and two-year contracts, as well as those provisions defining "years of teaching experience" to include only one year for each two years of "one-half" day assignment.

With respect to the latter provision, relator taught pursuant to a "half-time (56.25%)" assignment for school year 1984-1985. Accordingly, it is arguable that such assignment was for more than "one-half" day, thereby rendering the "years of teaching experience" definitional section inapplicable to relator and thus, pursuant to R.C. 4117.10(A), allowing R.C. 3319.11 to prevail. However, the provisions of the collective bargaining agreements providing for a three-year contract after the issuance of one- and two-year contracts is manifestly in conflict with R.C. 3319.11, which requires a continuing contract.[3]

Although relator does not raise

---

[2] Relator argues that the holding in *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382, 18 OBR 437, 481 N.E. 2d 632, requires this court to hold that R.C. 4117.10(A) does not apply where a collective bargaining agreement's provisions might conflict with the R.C. 3319.11 teacher tenure provisions. In *Dispatch Printing Co.* the Supreme Court stated the following:

"Further, respondents' contention requires an unreasonable construction of R.C. Chapter 4117. The wording in the cited portion of R.C. 4117.10(A) was designed to free public employees from conflicting laws which may act to interfere with the newly established right to collectively bargain. If respondents' construction of this provision were accepted, private citizens would be empowered to alter legal relationships between a government and the public at large via collective bargaining agreements. It is an axiom of judicial interpretation that statutes be construed to avoid unreasonable or absurd consequences. *State, ex rel. Cooper,* v. *Savord* (1950), 153 Ohio St. 367 [41 O.O. 396]; *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47 [45 O.O. 2d 327]." *Id.* at 384, 18 OBR at 439, 481 N.E. 2d at 634.

The "unreasonable or absurd consequences" referred to in *Dispatch Printing Co., supra,* were those arising from the argument therein that a provision in a collective bargaining agreement between a city and its municipal police force requiring the city to take all reasonable precautions to ensure the confidentiality of the personnel records of police officers took precedence over the mandates of R.C. 149.43, relating to the public's right to inspect public records. Accordingly, the *Dispatch Printing Co.* holding is limited to the proposition that a collective bargaining agreement cannot bind persons or entities who are not parties to that agreement in a manner which is inconsistent with existing law. See, *e.g.,* 1 Baker, Ohio School Law Guide (1987), Section 3.38; Pittner, DeTemple & Tremiti, Public Employee Collective Bargaining and Ohio Public Employers: A New Perspective (1986), 17 U. Tol. L. Rev. 719, 723-724.

If we were to accept relator's argument herein, where there is no infringement of rights of a party not engaged in the collective bargaining process, we would effectively render R.C. 4117.10(A) nugatory. Pursuant to R.C. Chapter 4117, the collective bargaining agreement is the preeminent device for determining a dispute and as in the case at bar, the parties had the opportunity to make the entitlement-to-a-continuing-contract provisions of R.C. 3319.11 either easier or harder to obtain.

[3] Respondent also argued that if relator were entitled to a continuing contract, such right should be postponed until the expiration of the three-year limited contract granted to relator at the April 16, 1984 meeting. In *State, ex rel. Paul,* v. *Bd. of*

such argument, it should be noted that Article XXIX of the 1982-1985 collective bargaining agreement provides that where there is a "conflict" between a provision of the agreement and any applicable state law, the parties shall meet for the purpose of bringing the affected contractual provision "into compliance with the law." Such "Contrary to Law" provisions appear in the vast majority of collective bargaining agreements, with their purpose seemingly to avoid illegal or void contractual provisions. Thus, although it might be argued that the provision herein evinces intent on the part of respondent and the Belpre Education Association for conflicting state law provisions, such as R.C. 3319.11, to prevail over provisions of the collective bargaining agreement, we find this argument unpersuasive in that the contractual provisions do not "conflict" with state "law" in the context that such provisions would be illegal and void because R.C. 4117.10(A) renders the contractual provisions legally enforceable. Accordingly, pursuant to R.C. 4117.10(A) and the applicable collective bargaining agreement provisions, relator did not have a clear legal right to a continuing contract after the 1984-1985 school year and respondent did not have a corresponding legal duty to issue the continuing contract.

Moreover, a writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law. R.C. 2731.05; *O.M. Scott & Sons Co., supra; Berger, supra; Westchester, supra.* Respondent argues that arbitration of relator's grievance provided a plain and adequate remedy in the ordinary course of law.

For a remedy at law to be adequate, the remedy should be complete in its nature, beneficial and speedy. *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 7, 22 OBR 1, 6, 488 N.E. 2d 181, 187. *State, ex rel. Merydith Constr. Co.,* v. *Dean* (1916), 95 Ohio St. 108, 123, 116 N.E. 37, 41. The question is whether the remedy is adequate under the circumstances. *State, ex rel. Dayton, supra.* The mere fact that relator failed to timely pursue her right to arbitration does not render the remedy inadequate although the relator is not now entitled to arbitration of her grievance. Cf., *e.g., State, ex rel. Cartmell,* v. *Dorrian* (1984), 11 Ohio St. 3d 177, 11 OBR 491, 464 N.E. 2d 556; *State, ex rel. Byrd,* v. *Bd. of Elections* (1981), 65 Ohio St. 2d 40, 19 O.O. 3d 230, 417 N.E. 2d 1375; *State, ex rel. Willcox,* v. *Kettering* (1984), 20 Ohio App. 3d 178, 20 OBR 222, 485 N.E. 2d 722.

Because of the speed, low cost and the general competence, indeed expertise, of most arbitrators, arbitration is

---

*Edn.* (1975), 44 Ohio St. 2d 5, 6-7, 73 O.O. 2d 44, 45, 335 N.E. 2d 703, 704, the Supreme Court held that a public school teacher under a limited three-year contract did not thereby acquire tenure under R.C. 3119.11, by stating the following:

"Relator became eligible for a continuing contract after his second year of employment by the Van Buren local schools. But that eligibility came into existence during the term of his three-year contract with respondent board. His status could not be changed unilaterally until the contract had expired. At no time was relator ever offered a continuing contract by respondent. *He was offered, and he accepted and taught under, a three-year contract.* * * *" (Emphasis added and footnote omitted.)

The teacher in *Paul, supra,* had his right to a continuing contract postponed until the conclusion of the limited contract that he had accepted. Here, unlike *Paul,* relator did not accept the three-year limited teaching contract offered to her by respondent.

the most favored means of contract enforcement available to educational institutions. 2 Rapp, Education Law (1987), Section 7.07[2]. Arbitration has been favored by the courts in this state from early times. *Youghiogheny & Ohio Coal Co.* v. *Oszust* (1986), 23 Ohio St. 3d 39, 41, 23 OBR 57, 58, 491 N.E. 2d 298, 299; *Corrigan* v. *Rockefeller* (1902), 67 Ohio St. 354, 367, 66 N.E. 95, 98. Typically, unions demand binding arbitration of grievances arising under the contract. O'Reilly, Ohio Public Employee Collective Bargaining (1984) 45, 46, Section 8.01.

Initially, we must determine whether the dispute in the case at bar is arbitrable. The 1982-1985 collective bargaining agreement defined "grievance" as follows:

"17.3 DEFINITIONS:
"1. A [']GRIEVANCE['] is an *alleged violation, misinterpretation or misapplication of the written agreement* entered into between the Board of Education and the recognized employee organization, setting forth the understanding of the parties upon those matters nenegotiated [*sic*] and agreed to." (Emphasis added.)

The 1985-1987 collective bargaining agreement contains a substantially similar definition.

Pursuant to the collective bargaining agreement, respondent was obliged to issue new continuing contracts "by June 1." Relator argued that respondent breached the agreement and filed a grievance. Although the issue of whether relator was entitled to a continuing contract as of June 1, 1985 involves, in part, a consideration of the application of R.C. 3319.11, as noted in our discussion, *supra,* due to the enactment of R.C. 4117.10(A), such issue also involves the application and interpretation of the collective bargaining agreement provisions providing a three-year contract for teachers after completion of one- and two-year contracts.

Under federal law, when language is ambiguous and unclear, any doubts concerning the scope of arbitrability should be resolved in favor of arbitration. *McGinnis* v. *E. F. Hutton & Co., Inc.* (C.A. 6, 1987), 812 F. 2d 1011, 1013. Given the favored status of arbitration in this state, *Youghiogheny & Ohio Coal Co., supra,* the *McGinnis* holding seems equally applicable herein. A "question is suitable for arbitration even though it may require the interpretation of statutory law as being incorporated into the collective bargaining agreement. * * *" *Taylor* v. *Johnson* (Okla. 1985), 706 P. 2d 896, 899. For the foregoing reasons, we conclude that the issue herein was arbitrable in that it involved matters concerning the alleged breach of the collective bargaining agreement and interpretation and application of the collective bargaining agreement. Such holding is supported by relator's own actions in pursuing the first three levels of the contractual grievance procedure.

Having determined that relator's grievance was arbitrable, we now consider whether, under the circumstances, relator was required to exhaust her contractual remedies, including arbitration, before she could seek a writ of mandamus. In holding that injunctive relief was not available to a teacher where he had not exhausted grievance and arbitration procedures in a collective bargaining agreement, this court, in *Baisden* v. *Oak Hill Union Local School Dist. Bd. of Edn.* (June 7, 1985), Jackson App. No. 491, unreported, at 9, stated as follows:

"* * * Individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.

*Republic Steel Corp.* v. *Maddox* (1965), 379 U.S. 650; [s]ee, also, *Kaufman* v. *Newburgh Heights* (1971), 26 Ohio St. 2d 217; *Ladd* v. *New York Central Railroad Co.* (1960), 170 Ohio St. 491, cert. denied (1960), 364 U.S. 821.

"In the case at bar, appellant admitted having knowledge of the grievance and arbitration procedures. However, while invested with such knowledge, appellant did not initiate those procedures. Injunctive relief will not lie where the aggrieved party has a full and adequate remedy at law. *Meeker* v. *Scudder* (1923), 108 Ohio St. 423; *Sargent* v. *Cincinnati* (1924), 110 Ohio St. 444; *Ohio Water Service Co.* v. *Alban* (1975), 42 Ohio St. 2d 501. Arbitration and the contractual remedy here regarding ability of a teacher to protest any particular assignment provides an adequate remedy. See *Maddox* and *Ladd, supra.* * * *"

However, the collective bargaining agreements in the instant case contain the following provision in the outlined grievance procedure:

"Nothing contained in this procedure shall be construed as limiting the rights of any teacher from using other professional or legal rights in resolving a complaint or problem."

The issue of whether an aggrieved person must first exhaust contractual remedies including arbitration before bringing legal action has most frequently arisen in federal suits for breach of collective bargaining agreements pursuant to Section 185, Title 29, U.S. Code. See Annotation, What Circumstances Justify Employee's Failure to Exhaust Remedies Provided in Collective Bargaining Agreement Before Bringing Grievance Suit Against Employer in Federal Court, Under § 301 of the Labor Management Relations Act of 1947 (1981), 52 A.L.R. Fed. 591; *Republic Steel Corp.* v. *Maddox* (1965), 379 U.S. 650. In actions pursuant to Section 185, Title 29, U.S. Code, a prerequisite to such suit is that the aggrieved party exhaust contractual remedies including binding arbitration. Annotation, *supra,* at Section 2.

However, where the grievance procedures are not intended as the exclusive remedy, exhaustion for such breach of collective bargaining agreement actions is excused. Annotation, *supra,* at Section 6[a]; *Maddox, supra,* at 657-658; *Vaca* v. *Sipes* (1967), 386 U.S. 171, 184; *Grogg* v. *General Motors Corp.* (S.D. N.Y. 1978), 444 F. Supp. 1215, 1222; *Cooper* v. *Westinghouse Elec. Corp.* (S.D. Ind. 1976), 416 F. Supp. 13; *Piper* v. *Meco, Inc.* (N.D. Ohio 1968), 302 F. Supp. 926, 928, affirmed (C.A. 6, 1969), 412 F. 2d 752; *Hotel & Restaurant Employees & Bartenders Internatl. Union, AFL-CIO* v. *Playboy Clubs Internatl., Inc.* (S.D. Ohio 1971), 324 F. Supp. 859, 862, reversed and remanded on other grounds (C.A. 6, 1972), 454 F. 2d 703.

Relator essentially argues that because the contractual remedy explicitly does not bar alternative legal action, the failure to exhaust the arbitration level of the grievance procedure, as in actions pursuant to Section 185, Title 29, U.S. Code, should not act to bar the mandamus action. However, while we agree that such nonexclusive remedy clauses in collective bargaining agreements would not be a general bar to judicial intervention, see, *e.g., Woodruff* v. *Cabell Huntington Hosp. Bd. of Trustees* (W.Va. 1984), 319 S.E. 2d 372, 375-376, it must be emphasized that mandamus is an extraordinary judicial remedy which cannot be used as a substitute for available administrative or legal remedies, absent special circumstances. *State, ex rel. Webb,* v. *Bryan City School Dist. Bd. of Edn.* (1984), 10 Ohio St. 3d 27, 32, 10 OBR 178, 183-184, 460 N.E. 2d 1121, 1125-1126; *State, ex rel. Cleveland,* v. *Calandra*

(1980), 62 Ohio St. 2d 121, 123, 16 O.O. 3d 143, 144, 403 N.E. 2d 989, 990.[4]

We are not persuaded that the presence of nonexclusive remedy clauses in collective bargaining agreements renders the remedy of arbitration any less adequate or that such constitute "special circumstances" sufficient to waive the exhaustion requirement. See, e.g., Fortunato v. Bd. of Public Safety (1980), 36 Conn. Supp. 637, 423 A. 2d 909, which held that the fact that remedies found under a grievance procedure in a collective bargaining agreement may have conflicted with statutorily provided remedies did not preclude the exhaustion of the contractual remedies prior to seeking a writ of mandamus. A decision by an impartial arbitrator provides a suitable alternative remedy so as to preclude mandamus. Taylor v. Johnson, supra (706 P. 2d), at 899; Maddox, supra. Cf., also, Chyu v. Cty. of Chautauqua (1985), 115 A.D. 2d 989, 497 N.Y. Supp. 2d 552; Hoffman v. Grove (W.Va. 1983), 301 S.E. 2d 810; Grosse Pointe Farms Police Officers Assn. v. Chairman of the Michigan Emp. Relations Comm. (1974), 53 Mich. App. 173, 218 N.W. 2d 801.

In Woodruff, supra, the West Virginia Supreme Court of Appeals initially held that a nonexclusive remedy provision analogous to the instant case did not bar judicial intervention and then, in determining if grievance and arbitration procedures in a collective bargaining agreement constituted an adequate remedy so as to preclude mandamus, held as follows:

"We recognize, as we have in the past, that 'While it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie.' Syl. pt. 4, Cooper v. Gwinn, W.Va., 298 S.E. 2d 781 (1981); United Mine Workers of America v. Miller, W.Va., 291 S.E. 2d 673, 677 (1982). Because of the importance of the constitutional issues raised in this case, and because it is apparent that the respondents have continued to take retaliatory action against the continued distribution of leaflets, the grievance and arbitration procedure under the collective bargaining agreement is not equally as beneficial, convenient or effective as is extraordinary relief in this case." (Emphasis added.) Id. at 376-377.

Accordingly, the Woodruff court found extraordinary circumstances that rendered the grievance and arbitration procedures inadequate. Here, unlike Woodruff, relator does not argue, nor is there any indication, that the arbitration procedure contained in the collective bargaining agreements was futile or inadequate, or that her claim involved constitutional issues such as freedom of speech, or involved retaliatory action by respondent.

Any holding that the arbitration remedy herein was inadequate would effectively undercut that which union lobbyists themselves strongly advocated, see O'Reilly, supra, i.e., the favored arbitration process. Youghiogheny & Ohio Coal Co., supra. Accordingly, in that relator has not shown a clear legal right to a continuing con-

---

[4] This decision does not render the nonexclusive remedy provisions of the collective bargaining agreements nugatory in that the failure of relator to exhaust her contractual remedies by not requesting arbitration would not have barred other relief, e.g., a breach-of-contract action for damages suffered as a result of relator's not being granted a continuing contract. However, herein, we note that we have determined that respondent has not breached the collective bargaining agreement.

tract, and that she failed to exhaust her available contractual remedies by not pursuing the fourth level of the grievance procedure where arbitration would have provided a complete and adequate remedy at law had relator timely asserted the right to arbitration, relator is not entitled to a writ of mandamus.

*Writ denied.*

ABELE, J., concurs.

GREY, J., dissents.

GREY, P.J., dissenting. I dissent, first on procedural grounds.

The majority denies the writ because it holds that relator had an adequate remedy by way of arbitration.

In *Frontier Local Edn. Assn.* v. *Frontier Local Bd. of Edn.* (May 1, 1985), Washington App. No. 84 X 11, unreported, this court held that a provision in a collective bargaining agreement regarding arbitration of teacher assignments was in conflict with R.C. 3319.01 and in derogation of the school board's power. In *South Point Bd. of Edn.* v. *South Point Assn. of Classroom Teachers* (May 1, 1985), Lawrence App. No. 1657, unreported, this court vacated an arbitrator's decision on the grounds that it was in conflict with R.C. 3319.11. Both of these cases were decided with the knowledge that *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, 70 O.O. 2d 223, 323 N.E. 2d 714, established the right of public employees to collectively bargain. Relator's conclusion that arbitration was not an adequate remedy was based on all the prior decisions of this court. See my dissent in *Baisden* v. *Oak Hill Union Local School Dist. Bd. of Edn.* (June 7, 1985), Jackson App. No. 491, unreported.

I also dissent on the facts in this case. Under Section 31.3 of the collective bargaining agreement, a teacher is allowed one year's credit for each two years of one-half day teaching. Relator's contract is inconsistent since it describes her duties as "half-time (56.25%)."

The question is: are the parties bound by the phrase "half-time" or by the percentage "56.25%." As noted in *State, ex rel. Rodgers,* v. *Hubbard Local Bd. of Edn.* (1984), 10 Ohio St. 3d 136, 10 OBR 458, 461 N.E. 2d 1308, the Ohio Teacher Tenure Act is to be construed in favor of teachers. The issue here is: what credit should be granted to a teacher who teaches more than half-time, but less than full-time. The Supreme Court has already answered in *Rodgers, supra,* at 138-139, 10 OBR at 460, 461 N.E. 2d at 1310, which has a fact situation quite similar to the one herein, that:

"The record shows that appellant is a teacher, holding a professional teaching certificate, who has taught for at least three of the last five years in appellee's district. She was a part-time employee for some of those years; however, her duties were substantial and she performed them on a regular basis. Appellant has accomplished that which makes her eligible for tenure under R.C. 3319.11. * * *" See, also, *State, ex rel. Garay,* v. *Hubbard Local Bd. of Edn.* (1984), 11 Ohio St. 3d 20, 21, 11 OBR 53, 54, 462 N.E. 2d 1219, 1220.

In short, Relator Williams would be entitled to a continuing contract, unless prohibited by the collective bargaining agreement. While the contract is very explicit as to the minimum amount of teaching experience necessary to establish "half-time" status, it is vague about what constitutes full-time status, and absolutely silent on the status of teachers who

work more than half-time but less than full-time.

When a contract is silent on an issue, the parties to the contract are generally presumed to intend the ordinary meaning of the words used in their contract. See the discussion in 18 Ohio Jurisprudence 3d (1980), Contracts, Section 141 *et seq.* Further, in *Garay, supra,* the Supreme Court stated:

"* * * Where part-time teaching experience is regular and substantial, as in the instant case, years spent teaching less than full school days will be counted in determining eligibility for a continuing contract. *State, ex rel. Rodgers,* v. *Hubbard Local Bd. of Edn.* (1984), 10 Ohio St. 3d 136. * * *" *Id.* at 21, 11 OBR at 54, 462 N.E. 2d at 1220.

Since the Supreme Court has used "regular and substantial" as a standard, I would presume that this is what the parties intended. Since relator did work regularly and substantially, and since the contract itself does not bar her from being credited with a full year's experience, I can see no reason why she is not entitled to a full year's credit.

The majority opinion states that there arises a conflict over whether R.C. 4117.10(A) or R.C. 3319.11 prevails. I see no conflict, and relator does not argue that one exists, although, in light of our prior decisions, that claim is put forth in the alternative.

There is no conflict, or any question of statutory construction. This is a case of contract construction. Construing the words of this contract according to the ordinary rules of construction, relator is entitled to full-time credit, and even if there were no contract, she would still be entitled to it. She is not barred from it by any language in the contract, and is entitled to it as the words "regular and substantial" are ordinarily used. One is left then to wonder how the majority arrives at the conclusion that relator does not have a clear legal right to a continuing contract.

Thus, I dissent.