THE STATE, EX REL. WILLCOX, *v.* CITY OF KETTERING ET AL.

(No. 7938—Decided August 2, 1984.)

*Dennis A. Lieberman,* for relator.
*Robert E. Hunter* and *Hugh Altick,* for respondents.

*Per Curiam.* Respondents filed their motion for summary judgment in this original action in mandamus on June 7, 1984. Relator filed a motion for summary judgment on June 28, 1984.

The evidence reflects that reasonable minds can come to but one conclusion, and that conclusion is adverse to relator.

No genuine issues of material fact are present in this case. The affidavit of relator, Michael H. Willcox, reflects that he was employed as a patrol officer by the Kettering Police Department on July 25, 1980, when he participated in a promotional examination for the position of sergeant administered by the Kettering Civil Service Commission. Willcox averred that on or about May 17, 1982, he was ranked second on the eligibility list compiled from the results of the promotional exams, when two sergeant positions with the Kettering Police Department became available. At that time, Willcox was interviewed along with four other patrol officers by the chief of police and approximately six other police officers concerning the two sergeant vacancies. However, two other officers, one with the highest score and the other with the fourth highest score, were promoted to the vacant sergeant positions in May 1982.

Richard Strader, Personnel Director of the city of Kettering, stated in his affidavit that he is the custodian of the

records of the Kettering Civil Service Commission, and that based upon a review of the records and his independent recollection, there was no demand made upon the commission by Willcox for appointment as sergeant in the Kettering Police Department. The files indicate, according to Strader, that a letter was received by the commission from Willcox requesting the commission to investigate the matter of his being passed over, which the commission did review. The commission found no violation occurred.

The Kettering Charter provides in pertinent part:

"SECTION 7-6. CIVIL SERVICE COMMISSION. The Civil Service Commission shall consist of three (3) electors, one (1) elector appointed by the Board of Education, one (1) elector appointed by the Council and one (1) elector appointed by the Manager for non-concurrent terms of six (6) years. The members shall serve without compensation.

"SECTION 7-7. DUTIES. The Civil Service Commission shall provide by rule for the determination of merit and fitness as the basis for appointment and promotion in the service of the Municipality as required by the Constitution of Ohio, and for appeals from the action of the Manager or other officer in case of transfer, reduction or removal. The action of the Commission shall be final.

"SECTION 7-8. CLASSIFICATION OF SERVICE. The Civil Service of the Municipality is hereby divided into classified and unclassified service.

"SECTION 7-9. THE CLASSIFIED SERVICE. It shall include only the following full-time employees of the Municipality:

"(a) Members, including officers, of the Police and Fire Divisions other than the chiefs and assistant chiefs thereof. * * *

"* * *

"SECTION 7-11. CIVIL SERVICE FOR CLASSIFIED EMPLOYEES. The general law applying to civil service shall remain in full force and effect unless otherwise provided."

The Kettering Civil Service Commission Rules read, in pertinent part:

"*Section 6. Certification and Appointments*

"A. *Vacancies.* All vacancies in the classified service shall be filled by transfer, demotion or selection of eligibles certified from an appropriate eligible or promotional list. In the absence of eligibles for appointment by any of these methods, provisional appointments may be permitted for a period of 120 days.

"1. The appointing authority shall indicate whether the vacancy is to be filled by transfer, demotion or selection of an eligible from an appropriate list.

"2. If a new position is to be established, the Commission shall be notified and shall determine the proper classification of the position. If a determination is made that the position is classified, an appropriate eligible list shall be established.

"B. *Certification of Eligibles.* In the filling of all vacancies, with the exception of demotions and transfers, the Commission shall certify to the appointing authority the names of three persons standing highest on the appropriate eligible list, who have indicated a willingness to accept appointment to a position vacancy.

"1. If there is more than one vacancy, the CSC will certify two names more than the number of existing vacancies.

"2. In cases where there are fewer than three names available for appointment from an appropriate eligible list, such names shall be certified and the appointing authority may make a selection from such certification or may reject the certification until a full eligible list is created."

R.C. 124.44 states, in pertinent part:

"Whenever a vacancy occurs in the position above the rank of patrolman in a police department, and there is no eligible list for such rank, the municipal or civil service township civil service commission shall, within sixty days of such vacancy, hold a competitive promotional examination. After such examination has been held and an eligible list established, the commission shall forthwith certify to the appointing officer the name of the person receiving the highest rating. Upon such certification, the appointing officer shall appoint the person so certified within thirty days from the date of such certification."

Relator maintains in his argument made pursuant to his motion for summary judgment that the commission is required by the charter to promulgate rules that do not deviate from the general law of the state unless the charter provides for such deviation. In relator's view, as no section of the charter provides for the adoption and implementation of the "rule of three," the commission is required by the charter to follow the provisions of R.C. 124.44.

Section 7-11 of the Kettering Charter does state that the general law applying to civil service shall remain in full force and effect unless otherwise provided. However, the charter itself otherwise provides that the civil service commission shall provide by rule for the determination of merit and fitness as the basis for appointment and promotion in the service. Therefore, the certification of individuals for filling vacancies in the classified service of the city is governed by Section 6 of the Civil Service Commission Rules, and not R.C. 124.44.

A city with a home-rule charter may adopt a "rule of three" as an exercise of a power of local self-government, notwithstanding that the rule conflicts with a state statute. *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191 [5 O.O.2d 481]. Further, as this court held in *State, ex rel. Jackson,* v. *Dayton City Comm.* (App. 1939), 30 Ohio Law Abs. 378, a civil service commission's adoption of a rule pursuant to a charter provision which provides for a general grant of rule-making power to a civil service commission, will prevail over a conflicting state statute. See, also, *Beacon Journal Publishing Co.* v. *Akron* (1965), 3 Ohio St. 2d 191 [32 O.O.2d 183]. Here, the adoption of the "rule of three" is within the scope of authority granted to the Kettering Civil Service Commission, thus Section 6 of the rules is not subject to attack because it is legislation outside the power of an administrative body to enact. See *Jackson* at 383.

We note that in this case that the Kettering Charter grants general rule-making power to the civil service commission. No provision of the charter provides for the certification of eligibles for the filling of vacancies. The case here at issue can be contrasted to *State, ex rel. Fraternal Order of Police,* v. *Dayton* (1977), 49 Ohio St. 2d 219 [3 O.O.3d 360]. In *Dayton,* pursuant to the Dayton Charter, only the chief examiner could fill positions in the classified service. Since the Dayton Charter expressly set forth this responsibility, any transfer of the duty to others by rule was an unlawful delegation of authority. Therefore, the "rule of three" adopted by rule in the Dayton case was held invalid because it violated the city charter.

To obtain a writ of mandamus, a relator must show a clear legal right to the relief requested, that respondent has a clear legal duty to perform the requested act, and that there is no adequate remedy at law. *State, ex rel. Cartmell,* v. *Dorrian* (1984), 11 Ohio St. 3d 177. Relator does not have a clear right to the relief requested in this action. Additionally, the Kettering Civil Service Commission formally rejected the asser-

tions of relator that he should have automatically received a promotion instead of being passed over for promotion. The Kettering Civil Service Commission is a commission within the meaning of R.C. 2506.01. Consequently, relator had an adequate remedy at law available to him under R.C. 2506.01, *i.e.*, an appeal to the common pleas court from the final order of the commission concerning the rejection of relator's assertion that a violation occurred when he was passed over for promotion. See *State, ex rel. Marshall,* v. *Civil Service Comm.* (1968), 14 Ohio St. 2d 226 [43 O.O.2d 333]; *State, ex rel. Steyer,* v. *Szabo* (1962), 174 Ohio St. 109 [21 O.O.2d 366].

Respondents' arguments in regard to laches are not well-taken.

Relator's motion for summary judgment is overruled. Respondents' motion for summary judgment is sustained. The petition for writ of mandamus is denied, and the action is dismissed.

*Writ denied.*