SPRINGFIELD COMMAND OFFICERS ASSOCIATION et al., Appellants,

v.

CITY COMMISSION FOR THE CITY OF SPRINGFIELD et al., Appellees.

[Cite as *Springfield Command Officers Assn. v. Springfield City Comm.* (1990), 62 Ohio App.3d 301.]

Court of Appeals of Ohio,
Clark County.

No. 2683.

Decided Oct. 3, 1990.

Thomas W. Wilson, for appellants.

*Jerome M. Strozdas,* for appellees.

---

FAIN, Judge.

Plaintiffs-appellants, John Davey and Nelson Smith ("the officers"), appeal from an adverse judgment rendered after a bench trial upon their complaint for a declaratory judgment, promotion, and back pay. The officers contend that the trial court erred in holding, as a matter of law, that the vacant positions to which they sought to be promoted could be abolished before being filled. They also contend that the trial court erred in not finding that defendant-appellee, the city of Springfield, acted in bad faith in abolishing the positions to which they sought to be promoted, and that, in this connection, the trial court erred in sustaining objections to certain testimony, based upon hearsay.

We conclude that the trial court correctly excluded the testimony as hearsay, and that the record in this case supports the trial court's finding that the city acted in good faith. We further conclude that the city could lawfully abolish the positions to which the officers sought to be promoted without first filling those positions. Accordingly, the judgment of the trial court will be affirmed.

## I

Davey and Smith were both sergeants on the Springfield police force who had sought promotion to the position of lieutenant. They both sat for a promotional examination in 1988, and were eligible for promotion from the list established as a result of that examination, for one year beginning in September 1988. The highest score on the examination was recorded by David Walters, who was promoted to lieutenant in 1988. Smith recorded the second-highest score, and Davey recorded the third-highest score.

In December 1988, two vacancies in the position of lieutenant occurred as a result of the retirement of Lieutenants Barcelona and Beady.

In January 1989, the City Commission for the city of Springfield adopted an ordinance abolishing the two vacant lieutenant positions on the Springfield police force, citing a shortage of funds. The promotion list for lieutenant expired in September 1989. Neither Davey nor Smith was promoted prior to the expiration of the promotional list.

Section 92 of the Springfield City Charter includes the following provision:

"In providing for the classification of the personnel of the Police and Fire Divisions, the City Commission shall not abolish any position until a vacancy shall have occurred therein."

R.C. 124.44, as construed by *Zavisin v. Loveland* (1989), 44 Ohio St.3d 158, 541 N.E.2d 1055, provides that vacancies in police departments in positions above the rank of police patrolman must first be filled by appointment before those positions may be abolished.

The central issue before the trial court, which is now before this court, was how to reconcile the conflict between the Springfield City Charter provision and R.C. 124.44. The officers also claimed, in their complaint, that the city acted in bad faith in abolishing the two lieutenant positions to which they sought promotion. In that connection, the officers sought to introduce testimony by Smith to the effect that Roger Marcum had told him that Springfield Police Chief Roger Evans had told Marcum that Evans did not want Davey to be promoted. The trial court excluded this testimony as hearsay.

The trial court, following a bench trial, concluded that the Springfield City Charter provision was in direct conflict with R.C. 124.37 and 124.44; that the charter provision prevailed, as a matter of law; that the lieutenant positions were properly abolished in accordance with the charter provision; and that the officers had failed to establish bad faith or the existence of an ulterior motive. The trial court entered judgment accordingly. From the judgment, this appeal is taken.

## II

The officers' first assignment of error is as follows:

"The trial court erred in ruling that the city's abolition of two lieutenants positions in the Springfield Police Department in January, 1989, did not violate Ohio law."

Both parties agree that Section 92 of the Springfield City Charter, which provides that a position in the police division may not be abolished until it has become vacant, is in direct conflict with R.C. 124.44, which, at least as interpreted by *Zavisin v. Loveland, supra*, provides that a vacancy in a position above the rank of patrolman must be filled before the position may be abolished. The city contends that its charter provision should prevail, and the officers contend that R.C. 124.44, being part of Ohio's civil service statutes, should prevail.

■ The city cites *State, ex rel. Bardo, v. Lyndhurst* (1988), 37 Ohio St.3d 106, 524 N.E.2d 447, and *State, ex. rel. Canada, v. Phillips* (1958), 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, in support of the proposition that provisions in a municipal charter adopted pursuant to Section 3, Article XVIII, Ohio Constitution which pertain to the appointment of officers within a city's

police force are an exercise of local self-government, and, as such, prevail in the event of a conflict with statutory civil service provisions. We agree that the cases cited by the city support its proposition, and we further agree that if these were the Supreme Court's last words on the subject, the city would prevail.

The Supreme Court's last pronouncement on this issue is *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 539 N.E.2d 103. In that case, the Supreme Court considered a conflict between provisions in a municipal charter adopted pursuant to Section 3, Article XVIII of the Ohio Constitution, and the provisions of the Public Employees' Collective Bargaining Act, codified in R.C. Chapter 4117. In an opinion written by Justice Douglas, and concurred in by three other justices, the Supreme Court held that the provisions of R.C. Chapter 4117 prevailed over conflicting provisions of the municipal charter in that case. The Supreme Court relied heavily upon Section 34, Article II of the Ohio Constitution which provides as follows:

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and the general welfare of all employees; and no other provision of the constitution shall impair or limit this power."

The Supreme Court, in *Rocky River, supra,* held that the provisions for collective bargaining by public employees enacted in R.C. Chapter 4117 were enacted pursuant to the grant of legislative power contained in Section 34, Article II, so that the restriction upon the General Assembly's legislative power inherent in the home rule powers extended by Section 3, Article XVIII was incapable of limiting the General Assembly's exercise of power, pursuant to the final clause of Section 34, Article II.

The city contends that the situation in the case before us is distinguishable in that Ohio's civil service laws, and in particular R.C. 124.44, were not enacted pursuant to Section 34, Article II.

In this connection, footnote 14 in *Rocky River v. State Emp. Relations Bd., supra,* at 43, 539 N.E.2d at 113, is significant. That footnote reads, in its entirety, as follows:

"But, see, *State, ex rel. Canada, v. Phillips* (1958), 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, paragraph four of the syllabus, which, however, needs to be read in context with the issues involved in that case. *Canada* is a case involving civil service and concerns Section 10, Article XV of the Ohio Constitution. It does not deal in any way with Section 34, Article II, which is so central to the case before us today.

"In any event, a review of the constitutional debates concerning Section 3, Article XVIII reveals that the narrow interpretation adopted by the *Canada* court is unwarranted. Mr. George W. Knight, a convention delegate and a chief proponent of the amendment, characterized its purpose as follows: '[T]his proposal undertakes * * * to provide that municipalities shall have the power to do those things which are not prohibited, that is, those things with reference to local government, with reference to the affairs which concern the municipality, which are not forbidden by the lawmaking power of the state, *or are not in conflict with the general laws of the state* under the police power and the general state regulation. * * *' (Emphasis added.) 2 Proceedings and Debates of the Constitutional Convention of the State of Ohio (1913) 1433. Obviously, this characterization of Section 3, Article XVIII is totally inconsistent with the interpretation espoused by the *Canada* court."

While the above-quoted footnote in *Rocky River* first suggests that the *Canada* case is distinguishable, because it involves a conflict between a home-rule charter provision and the civil service statutes, that footnote concludes by suggesting that the *Canada* case is no longer good law because the Supreme Court, in that case, misunderstood the scope of the home-rule amendment.

Civil service laws are specifically provided for in Section 10, Article XV of the Ohio Constitution, which provides as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. *Laws shall be passed providing for the enforcement of this provision.*" (Emphasis added.)

Because Section 10, Article XV specifically provides for civil service legislation, we presume that when the General Assembly enacted the civil service statutes, including R.C. 124.44, it did so pursuant to Section 10, Article XV, *not* pursuant to Section 34, Article II. Therefore, the final clause in Section 34, Article II, which the Supreme Court found controlling in *Rocky River, supra*, would, as noted in footnote 14 of that opinion, have no application where the Ohio civil service statutes are concerned. Consequently, we conclude, as that footnote suggests, that a conflict between a home-rule charter provision and a civil service statute is distinguishable from a conflict between a home-rule charter provision and the Public Employees' Collective Bargaining Act.

There remains the suggestion, in footnote 14 of *Rocky River, supra*, that *State, ex rel. Canada, v. Phillips, supra*, in which it was held that a home-rule charter provision must prevail in event of a conflict with the civil service statutes, is not good law. Such a conclusion was not essential to the holding in *Rocky River*, and formed no part of its syllabus. Up until *Rocky River*

was decided, it had become settled law that a home-rule charter provision must prevail when it is in conflict with the civil service statutes, at least insofar as the charter provision pertains to the appointment (or, as in this case, the promotion) of municipal officers. *State, ex rel. Bardo, v. Lyndhurst* (1988), 37 Ohio St.3d 106, 524 N.E.2d 447; *State, ex rel. Willcox, v. Kettering* (1984), 20 Ohio App.3d 178, 20 OBR 222, 485 N.E.2d 722. We are not prepared to deem this settled proposition of law to have been overruled by dictum appearing in a footnote in *Rocky River v. State Emp. Relations Bd., supra,* notwithstanding the high regard we have for the illustrious author of that footnote.

■ We conclude that Section 92 of the Springfield City Charter prevails to the extent that it is in conflict with R.C. 124.44. Pursuant to the Springfield Charter provision, the city was required to wait until the two lieutenant positions were vacant before abolishing those positions. Obviously, then, it had the power to abolish those positions while they were vacant; indeed, it lacked the power to abolish those positions unless they were vacant.

The officers' first assignment of error is overruled.

## III

The officers' second assignment of error is as follows:

"The city acted in bad faith in abolishing these two lieutenant positions, and Ohio law prohibits such conduct."

■ The officers argue that bad faith should be presumed from the mere fact that the city acted in violation of R.C. 124.44. In view of our conclusion in Part II, above, that Section 92 of the Springfield City Charter prevails to the extent of its conflict with R.C. 124.44, we obviously do not agree that the city's bad faith may be presumed from its actions. It acted in reasonable reliance upon Section 92 of its Charter.

■ Finally, in connection with this assignment of error, the officers argue that the trial court improperly excluded as hearsay Smith's testimony that Roger Marcum had told Smith that Chief Roger Evans had told Marcum that Evans did not want Davey to become a lieutenant. It may be that Chief Evans' out-of-court statement would have been admissible as part of the *res gestae*, since the mere fact that Chief Evans made that statement, if he did so, is evidence of bad faith. However, Marcum's testimony was not offered. Smith's testimony was in the nature of double hearsay, since Smith was relating what Marcum had told Smith that Chief Evans had told Marcum.

Marcum's out-of-court statement was being offered for its truth, and, as such, was properly excluded as hearsay.

The officers' second assignment of error is overruled.

## IV

Both of the officers' assignments of error having been overruled, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and BROGAN, J., concur.